IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOEL J., an individual,<br><br>                              Plaintiff,<br>v.<br><br>AETNA LIFE INSURANCE COMPANY, a corporation,<br><br>                        Defendant. | **\*\*\* SEALED \*\*\***<br><br>**MEMORANDUM DECISION AND ORDER GRANTING AETNA'S AMENDED MOTION FOR SUMMARY JUDGMENT AND DENYING JOEL J.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:12-cv-01005 DN<br><br>District Judge David Nuffer |

      Defendant Aetna Life Insurance Company ("Aetna") moves for summary judgment in this ERISA dispute. Aetna originally filed a motion for summary judgment[1] along with a motion to seal[2] Exhibit 1, which is the administrative record that contains protected health information. The motion to seal was granted.[3] Aetna subsequently filed an Amended Motion for Summary Judgment ("Aetna's Amended Motion"),[4] making only minor typographical changes to the original motion and adding case citations, but not making substantive changes to any arguments. The original motion for summary judgment[5] is deemed MOOT because it was replaced by Aetna's Amended Motion. The exhibits that were attached to the original motion will still be considered.

---

[1] Defendant's Motion for Summary Judgment, docket no. 19, filed Feb. 21, 2014.

[2] Defendant's Motion to Seal Document 19-2, docket no. 21, filed Feb. 21, 2014.

[3] Order Granting Motion to Seal and Sealing Exhibit 1 to Defendant's Motion for Summary Judgment, docket no. 23, filed Feb. 25, 2014.

[4] Defendant's Amended Motion for Summary Judgment ("Aetna's Amended Motion"), docket no. 20, filed Feb. 21, 2014.

[5] Docket no. 19.

Plaintiff Joel J. ("Joel") also filed a Motion for Summary Judgment ("Joel's Motion").[6] Joel's Motion argues his insurance policy covers his daughter's mental health treatment, and that Aetna's denial of coverage must be reversed.[7] In the alternative, Joel argues that the language of his insurance plan is ambiguous and should be resolved in his favor.[8] Joel's Motion additionally seeks attorney's fees and prejudgment interest.[9] Aetna's Amended Motion argues its denial is supported by the language of the insurance plan and its decision must be upheld.[10] After careful review of the parties' submissions, Aetna's Amended Motion is GRANTED, and Joel's Motion is DENIED. The Motion for Hearing[11] is also DENIED.

## CONTENTS

I.      Relevant Undisputed Facts .................................................................................... 2
II.     Standard of Review................................................................................................ 9
III.    Discussion .............................................................................................................. 9
        A.      Aetna's Decision Will Be Reviewed *De Novo* ...................................... 9
        B.      The Plan Language Is Unambiguous ...................................................... 11
        C.      Joel's Interpretation Is Inconsistent with the Plain Language of the Plan........... 12
Order   ................................................................................................................................ 14

## I.      RELEVANT UNDISPUTED FACTS[12]

1.      Plaintiff Joel J. is a resident of New Jersey, and through his employment he is the participant in a group health benefits plan (the "Plan") sponsored by his employer, Norris, McLaughlin & Marcus, P.A., and funded and administered by Aetna.[13]

---

[6] Plaintiff's Motion for Summary Judgment ("Joel's Motion"), docket no. 22, filed Feb. 21, 2014.

[7] *Id*. at 19.

[8] *Id.* at 22–24.

[9] *Id.* at 24–28.

[10] Aetna's Amended Motion at 19.

[11] Request for Oral Argument on the Parties' Cross Motions for Summary Judgment, docket no. 32, filed May 5, 2014.

[12] These facts have been determined to be undisputed following a review of the parties' briefing and the sealed administrative record.

2.      The Plan provides that treatment for mental health conditions on an inpatient or outpatient basis "are Covered Medical Expenses to the same extent as charges incurred for the treatment of any other disease."[14]

3.      The Plan states that "[t]he benefits shown in [the] Summary of Coverage are available for you and your eligible dependents."[15]

4.      The Plan requires "certification" for hospital and residential treatment facility admissions and states that if treatment is not certified, payment of benefits may be reduced or denied.[16]

5.      The Plan requires certification for services in connection with hospital or residential treatment admissions for alcoholism, drug abuse, or mental disorders.[17]

6.      The Plan also states:

> You must obtain certification for certain types of Non-Preferred Care to avoid a reduction in benefits paid for that care . . . [.]
>
> Certification for . . . Residential Treatment Facility Admissions, . . . . Excluded Amount:      $400.[18]

7.      The Plan excludes coverage "for services and supplies not **necessary**, as determined by Aetna, for the diagnosis, care or treatment of the disease or injury involved."[19]

---

[13] Aetna's Amended Motion at 4; Administrative Record at 21, docket no. 19-2, filed under seal Feb. 21, 2014.

[14] Joel's Motion at 4; Administrative Record at 454.

[15] Aetna's Amended Motion at 4; Administrative Record at 410.

[16] Joel's Motion at 4; Administrative Record at 453.

[17] Joel's Motion at 4; Administrative Record at 453.

[18] Joel's Motion at 4; Administrative Record at 415.

[19] Aetna's Amended Motion at 3–4; Administrative Record at 455 (emphasis in original).

8.      Pursuant to the Plan, "[a] service or supply furnished by a particular provider is necessary if Aetna determines that it is appropriate for the diagnosis, the care or the treatment of the disease or injury involved."[20]

9.      The Plan defines a "Residential Treatment Facility – Mental Disorders" as an institution that meets all of the following criteria:

- On-site licensed **Behavioral Health Provider** 24 hours per day/7 days a week.

- Provides a comprehensive patient assessment (preferably before admission, but at least upon admission).

- Is admitted by a **Physician**.

- Has access to necessary medical services 24 hours per day/7 days a week.

- Provides living arrangements that foster community living and peer interaction that are consistent with developmental needs.

- Offers group therapy sessions with at least an RN or Masters-Level Health Professional.

- Has the ability to involve family/support systems in therapy (required for children and adolescents; encouraged for adults).

- Provides access to at least weekly sessions with a Psychiatrist or psychologist for individual psychotherapy.

- Has peer oriented activities.

- Services are managed by a licensed **Behavioral Health Provider** who functions under the direction/supervision of a licensed psychiatrist (Medical Director).

- For in-network Services, services are managed by a licensed **Behavioral Health Provider** who, while not needing to be individually contracted, needs to (1) meet the Aetna credentialing criteria as an individual practitioner, and (2) function under the direction/supervision of a licensed psychiatrist (Medical Director).

---

[20] Aetna's Amended Motion at 4; Administrative Record at 484.

- Has individualized active treatment plan [sic] directed toward the alleviation of the impairment that caused the admission.

- Provides a level of skilled intervention consistent with patient risk.

- Meets any and all applicable licensing standards established by the jurisdiction in which it is located.

- Is not a Wilderness Treatment Program or any such related or similar program, school and/or education service.[21]

10.     The Plan defines **Behavioral Health Provider** as "[a] licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions."[22]

11.     The Plan includes instructions for submitting an appeal of denied coverage and provides 180 days from the date of denial to submit the first appeal.[23]

12.     The Plan also states that Plan participants "may" request a second level of appeal but requires that the second appeal be filed within sixty days of denial of the first level appeal.[24]

13.     Joel's daughter, Laura, was admitted to New Haven, a licensed residential treatment center in Spanish Fork, Utah, on May 16, 2009, and stayed until January 1, 2013.[25]

14.     On July 13, 2009, Jacqueline Fairbanks, an employee of New Haven, called Aetna to request certification from Aetna for Laura's stay at New Haven.[26]

15.     Ms. Fairbanks spoke to Aetna employee Larry Silva, who provided Ms. Fairbanks with certain policy information and asked Ms. Fairbanks to respond to a series of questions

---

[21] Aetna's Amended Motion at 5–6; Administrative Record at 487–88 (emphasis in original).

[22] Aetna's Amended Motion at 6; Administrative Record at 478 (emphasis in original).

[23] Joel's Motion at 5; Administrative Record at 465.

[24] Joel's Motion at 6; Administrative Record at 466.

[25] Aetna's Amended Motion at 6.

[26] Aetna's Amended Motion at 6; Administrative Record at 405.

relating to New Haven to determine whether New Haven met the admission criteria set forth in the Plan.[27]

16.     Ms. Fairbanks informed Mr. Silva that, among other things, New Haven did not have an on-site licensed behavioral health provider twenty-four hours per day, seven days per week.[28]

17.     Based on Ms. Fairbanks's answers to Mr. Silva's questions, Mr. Silva informed Ms. Fairbanks that the Plan's criteria for a Residential Treatment Facility were not met, and therefore Aetna could not certify Laura's stay as it would not be a covered service.[29]

18.     Mr. Silva asked Ms. Fairbanks whether they needed any referrals to in-network facilities and she responded that the family wanted to keep Laura at New Haven.[30]

19.     That same day, Aetna sent Joel a letter denying the claim. In the letter, Aetna stated:

> Coverage for this service has been denied for the following reason:
> This is not a covered service under the terms of the Plan.
>
> This coverage decision was based upon the General Exclusions/Exclusions described in the Booklet-Certificate/benefit handbook. Please reference the Booklet/benefit handbook under the General Exclusions/Exclusions section for a full explanation of the coverage available.[31]

20.     Joel appealed Aetna's denial by letter dated January 4, 2010.[32]

21.     Joel's January 4, 2010 letter stated that his appeal was based on his belief that New Haven had contacted Aetna and assured coverage; that the services were justified under the

---

[27] Aetna's Amended Motion at 6; Administrative Record at 396.

[28] Aetna's Amended Motion at 6; Administrative Record at 396.

[29] Aetna's Amended Motion at 6-7; Administrative Record at 395-96.

[30] Aetna's Amended Motion at 7; Administrative Record at 395.

[31] Aetna's Amended Motion at 7; Joel's Motion at 6; Administrative Record at 21–22.

[32] Aetna's Amended Motion at 7; Administrative Record at 19-20.

"Group Policy;" and that the pre-certification had been met in light of the verification of benefits provided by Aetna to New Haven.[33]

22.    On January 28, 2010, Aetna informed Joel that it was upholding its denial.[34] The letter stated:

> In your appeal, you requested reimbursement for treatment at a non-par [out-of-network] facility that is not recognized by Aetna's Facility Criteria. Your plan covers services rendered in a treatment facility that have been certified.
>
> This information can be found in your Summary Plan Documents . . . .
>
> Based upon a review of the facilities [sic] licensure and admission criteria, New Haven does not have a licensed Behavioral Health [sic] staffed between the hours of 11pm-7am. Therefore, new Haven does not meet plan requirements for facility eligibility.[35]

23.    Joel requested various documents from Aetna to better understand the basis for Aetna's denial and, on March 9, 2010, Aetna sent copies of Joel's appeal and the original denial; a summary plan description for the Plan; the summary of certificate for the Plan; a copy of New Haven's licensure as a residential treatment facility in the State of Utah; a copy of New Haven's Utah Department of Health licensure; and a copy of the Level I denial letter.[36]

24.    On May 18, 2010, Joel requested a second level appeal by sending Aetna a letter stating that Aetna's January 2010 letter did not respond to the points and questions raised in his first appeal; that Aetna had not provided any documents with its March 9, 2010 letter Joel did not already have; that New Haven was licensed in the State of Utah and met all the requirements

---

[33] Administrative Record at 19–20.

[34] Aetna's Amended Motion at 7.

[35] Administrative Record at 7–10.

[36] Joel's Motion at 7.

under the definition of Residential Treatment Facility in the Plan; and that Aetna should overturn its decision to deny his benefits claim based on this language.[37]

25.     On June 2, 2010, Aetna informed Joel that his May 18, 2010 appeal was untimely because it had not been made within sixty days from the date he received Aetna's adverse benefit decision in response to his first level appeal.[38]

26.     On August 19, 2011, New Haven sent Aetna another appeal letter submitting a Provider Appeal.[39]

27.     New Haven restated Joel's arguments and insisted Aetna had improperly denied Plaintiff's claim because New Haven is "a licensed organization . . . providing diagnostic, therapeutic or psychological services for behavioral health conditions" which meets the Plan's definition of a Behavioral Health Provider, and because New Haven provides care 24 hours per day/7 days a week" it satisfies Aetna's requirement that there be an "On-site licensed **Behavioral Health Provider** 24 hours per day/7 days a week."[40]

28.     Aetna responded to New Haven on October 25, 2011, stating that the Provider Appeal was untimely and would therefore not be considered.[41]

29.     Joel filed a complaint initiating this case on October 29, 2012.[42]

---

[37] Joel's Motion at 7–8; Administrative Record at 13–14.

[38] Aetna's Amended Motion at 9; Administrative Record at 29–32. Joel does not dispute that Aetna refused to consider his appeal on the basis that it was not submitted within 60 days, but argues that Aetna's 60-day deadline is contrary to the 180-day allowance provided by ERISA, specifically 29 C.F.R. § 2560.503-1(h)(3).

[39] Aetna's Amended Motion at 9; Administrative Record at 30–32.

[40] Aetna's Amended Motion at 9–10; Administrative Record at 30–32 (emphasis in original)..

[41] Joel's Motion at 8; Administrative Record at 376.

[42] Joel's Motion at 8.

## II.       STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[43] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[44] In determining whether there is a genuine dispute as to a material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[45] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[46]

## III.       DISCUSSION

### A. Aetna's Decision Will Be Reviewed *De Novo*

In an Employee Retirement Income Security Act[47] ("ERISA") case involving the denial of benefits, the applicable standard of review is "de novo unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[48] If the administrator has retained discretionary authority, a "deferential standard of review [is applied,] ask[ing] only whether the denial of benefits was arbitrary and capricious."[49] To determine whether an administrator has retained discretion, "it is

---

[43] Fed. R. Civ. P. 56(a).

[44] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[45] *Id.*

[46] *Id.* at 670–71.

[47] 29 U.S.C. § 1001 *et seq.*

[48] *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1214 (10th Cir. 2015) (internal quotation marks omitted).

[49] *Id*.

essential to focus precisely on what decision is at issue, because a plan may grant the administrator discretion to make some decisions but not others."[50]

Aetna asserts it clearly retained discretionary authority because the Plan language states that coverage may be denied "for services and supplies not necessary, as determined by Aetna."[51] This language, Aetna argues, grants it discretionary authority, therefore warranting a deferential standard of review.[52] However, this argument is too broad. Although the Plan language *does* grant Aetna discretion to determine the necessity of a *particular service or supply*,[53] it does *not* grant Aetna discretion to interpret the Plan's terms.[54] Aetna fails to show otherwise.

The dispositive issue in this case is whether New Haven satisfied Aetna's requirements to be considered a Residential Treatment Facility, which, in turn, depends upon the interpretation of the term "Behavioral Health Provider" as it is used in the Plan. This is a decision that is made by interpreting a term in the Plan, not deciding whether a service or supply is "necessary." Because the Plan does not grant Aetna discretion to interpret the terms of the Plan, but only grants Aetna discretion to make determinations regarding "services and supplies not necessary,"[55] Aetna's interpretation of the term "Behavioral Health Provider" must be reviewed *de novo*.[56]

---

[50] *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1266 (10th Cir. 2002).

[51] Administrative Record at 455.

[52] Aetna's Amended Motion at 15–17.

[53] Administrative Record at 455, 484 (emphasis added).

[54] *See Panther v. Synthes (U.S.A.)*, 371 F.Supp.2d 1267, 1272–74 (D. Kan. 2005) (finding plan retained discretion for administrator to determine eligibility for benefits, but *not* to interpret plan terms).

[55] Administrative Record at 455.

[56] *See Panther*, 371 F.Supp.2d at 1274.

### B.  The Plan Language Is Unambiguous

"In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law."[57] "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term."[58] To determine if a plan is ambiguous, the plan language is given "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean."[59] "[A] party cannot make a successful claim of ambiguity based on usage of a term that is not reasonable or is the product of forced or strained construction."[60]

Aetna refused to pay Joel's claim because, in Aetna's interpretation, New Haven did not qualify as a "Residential Treatment Facility" under the Plan. The Plan lists the requirements a facility must have in order to qualify as a "Residential Treatment Facility" under the Plan. One of the requirements is that an institution must have an "on-site licensed Behavioral Health Provider 24 hours per day/7 days a week."[61] The Plan defines "Behavioral Health Provider" as "[a] licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions."[62]

There is no ambiguity in the meaning of these terms. A facility may qualify as a "Residential Treatment Facility" under the Plan in two ways: (1) the facility may have an *organization* that is licensed to provide the listed services on-site 24 hours per day/7 days a

---

[57] *Admin. Comm. of Wal-Mart Assoc. Health and Welfare Plan, v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004).

[58] *Id.*

[59] *Id.*

[60] *United States v. Dunn*, 557 F.3d 1165, 1172–73 (10th Cir. 2009).

[61] Administrative Record at 39.

[62] *Id*. at 41.

week, or (2) the facility may have a *professional* that is licensed to provide the listed services on-site 24 hours per day/7 days a week. If the facility has a "licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions" that is "on-site . . . 24 hours per day/7 days a week," then the facility will be considered a "Residential Treatment Facility" under the Plan. This language is unambiguous, and will therefore be construed as a matter of law.

### C.  Joel's Interpretation Is Inconsistent with the Plain Language of the Plan

Joel argues New Haven qualifies as a Residential Treatment Facility because the New Haven *facility itself*—which is on-site 24/7—is an *organization* licensed as a residential treatment program and therefore is a licensed Behavioral Health Provider under the terms of the Plan.[63] This interpretation is a strained construction that runs contrary to the plain language of the Plan.

The Plan's definition of a Behavioral Health Provider requires more than being a licensed organization. The organization must also "*provid[e]* diagnostic, therapeutic or psychological services for behavioral health conditions.[64] Although the parties do not dispute that these services are provided within the New Haven facility, the facility itself does not, and cannot, provide them. Rather, the licensed professionals who work within the facility provide them. Consequently, it is contrary to the plain language of the Plan to consider the New Haven facility itself to be a Behavioral Health Provider.

This interpretation does not render superfluous the "organization" or "professional" distinction in the Plan's language. This argument has been advanced previously in a California

---

[63] Joel's Motion at 19.

[64] Administrative Record at 39 (emphasis added).

federal district court regarding this exact same Plan language, and was rejected.[65] The California

federal district court held that:

> [T]he term "organization" must be read in context, and in context, "organizations"
> here can refer to licensed professional practice groups. This interpretation is
> reasonable, and it continues to exclude Plaintiffs' convoluted defense of its
> facilities-alone argument while still supporting the legal and analytical distinction
> between organizations and professionals under the plans.[66]

This persuasive reasoning applies directly to this case. New Haven alone cannot provide

diagnostic, therapeutic, or psychological services without a licensed professional on-site. It needs

a licensed professional there, on-site, to provide such services. The licensed professional can be

an individual, or the professional can be part of an organization that is licensed to provide the

necessary services under the Plan. It does not matter whether the "Behavioral Health Provider" is

a single professional or an organization of professionals. As long as a "licensed organization or

professional providing diagnostic, therapeutic or psychological services for behavioral health

conditions" is "on-site . . . 24 hours per day/7 days a week," then the facility will be considered a

"Residential Treatment Facility" under the Plan. This interpretation is reasonable and preserves

the distinction between "organization" and "professional" while rejecting the unreasonable

argument that New Haven itself could provide services to a patient.

Because New Haven did not have a licensed Behavioral Health Provider on-site 24 hours

per day/7 days a week, Aetna's denial of coverage was consistent with the terms of the Plan.

---

[65] *See Elizabeth L. v. Aetna Life Ins. Co.*, 2013 WL 6662724 at \*3-\*4 (N.D. Cal. 2013).

[66] *See id.* at \*4.

**ORDER**

IT IS HEREBY ORDERED that Aetna's Amended Motion[67] is GRANTED and Joel's Motion[68] is DENIED.

IT IS FURTHER ORDERED that Aetna's original motion for summary judgment[69] is deemed MOOT because it was replaced by Aetna's Amended Motion.

IT IS FURTHER ORDERED that the motion for hearing[70] is DENIED.

IT IS FURTHER ORDERED that because this Memorandum Decision and Order refers to material filed under seal, the parties shall meet and confer and Aetna shall file within fourteen (14) days an agreed redacted version of this Memorandum Decision and Order.

The Clerk is directed to close the case.

Dated March 22, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[67] Defendant's Amended Motion for Summary Judgment ("Aetna's Amended Motion"), docket no. 20, filed Feb. 21, 2014.

[68] Plaintiff's Motion for Summary Judgment ("Joel's Motion"), docket no. 22, filed Feb. 21, 2014.

[69] Defendant's Motion for Summary Judgment, docket no. 19, filed Feb. 21, 2014.

[70] Request for Oral Argument on the Parties' Cross Motions for Summary Judgment, docket no. 32, filed May 5, 2014.

United States District Court
for the
District of Utah
March 23, 2016

******MAILING CERTIFICATE OF THE CLERK******

RE:  J. V. Aetna Life Insurance
     2:12cv1005 DN


     Brian S. King
     336 S 300 E STE 200
     SALT LAKE CITY, UT 84111

     David N. Kelley
     FABIAN VAN COTT
     215 S STATE ST STE 1200
     SALT LAKE CITY, UT 84111-2323

_____

Aimee Trujillo,